**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| CHRISTINE A. STEYER AND MARTIN L. POOCK, <br><br> Plaintiffs, <br><br> v. <br><br> LYRIC OPERA OF CHICAGO <br><br> Defendant. | File No.: 1:17-CV-06014 <br><br> Honorable Judge John J. Tharp |

## DEFENDANT LYRIC OPERA OF CHICAGO'S
## RULE 56 STATEMENT OF MATERIAL FACTS

In accordance with Local Rule 56.1(a), Defendant, Lyric Opera of Chicago ("Lyric") by and through its attorneys, respectfully submits the following Statement of Material Facts in support of its Motion for Summary Judgment:

### JURISDICTION AND VENUE

1. Venue is proper in this district under 28 U.S.C. § 1391 (B) because the Plaintiffs reside, and Lyric does business, in this district. (*See* Complaint, attached as "**Exhibit A**," ¶¶ 2, 3.)

2. This Court has subject matter jurisdiction under 28 U.S.C. § 621 *et seq.* (*See* Answer, attached as "**Exhibit B**," ¶ 11.)

### PARTIES

3. Plaintiffs, Christine Steyer and Martin Poock, are individuals residing in this district. (See **Exhibit A**, ¶ 2.)

4. Lyric is a not-for-profit corporation operating under the laws of the State of Illinois and conducts business in Illinois. (See **Exhibit A**, ¶ 3.)

5. At the time of the Complaint Plaintiffs were employed by the Defendant as choristers. (See **Exhibit A**, ¶ 3, 13.)

**UNDISPUTED FACTS**

6. Lyric is an equal opportunity employer that treats employees and job applicants without regard to race, creed, color, age, national origin, sex, veteran or military status, sexual orientation, disability, or any other basis protected by Federal, state, or local law. (See Defendant's Response to Plaintiff's Request for Production bates-stamped DEF 00101 attached as "**Exhibit C**".)

7. Lyric is also subject to the terms of a bargaining agreement with the American Guild of Musical Artists (hereinafter known as "AGMA") which negotiates various terms, including auditions, rates of pay, hours and benefits. (See Defendant's Response to Plaintiff's Request for Production bates-stamped 00124-00293 attached as "**Exhibit D**".)

8. Plaintiffs are members of AGMA and receive benefits and negotiated terms of employment thereunder. (*See*, Deposition Transcript of Martin Poock attached as "**Exhibit E**" at pages 26:1-26:21 and Deposition Transcript of Christine Steyer attached as "**Exhibit F**" at page 54.)

9. Plaintiffs allege discrimination due to their age on or beginning in October of 2015 (Ex. A ¶ 6).

10. There are three groups of choristers at Lyric: Regular Chorus, Core Supplementary Chorus and Supplementary Chorus. (See Ex. E at pages 43:22-52:14.)

11. Plaintiffs allege that they were "demoted" from the Core Supplementary Chorus to the Supplementary Chorus following their auditions in October of 2015. (Ex. A ¶ 13.)

12. The negotiated agreement with AGMA sets forth certain requirements for the auditioning of choristers at Lyric as well as their hourly rates of pay and rates of pay for each performance. (Ex. E at pages 43:22-52:14.)

13. Rates of pay are determined by which chorus the singer is a member of as well as their level of seniority. (Ex. E at pages 43:22-52:14.)

14. Under the AGMA agreement, Lyric is allowed to audition members of the Core Supplementary Chorus every two years and Supplementary Choristers every year. (Ex. E at pages 43:22-52:14.)

15. Choristers in both the Core Supplementary Chorus and the Supplementary Chorus are part-time, freelance seasonal employees and are not prohibited by Defendant or by AGMA from singing with other organizations to supplement their income. (Ex. F at pages 30:15-35:1.)

16. The Chorusmaster of Lyric is the sole decision maker as to which choristers are selected for each chorus during the audition process. (Ex. E at pages 101:21-105:18.)

17. AGMA requires that any "comment letters" following a choristers' audition be sent to them within two weeks of their audition. (Ex. D at page 54.)

18. Choristers who have been selected for a position in the Core Supplementary Chorus are then issued a letter of engagement for the following season, followed by a two year contract. (Ex. F at pages 54:15-56:11.)

19. Choristers selected for the Supplementary Chorus are issued a one year contract. (Ex. E at pages 43:22-52:14 and Ex. F at page 133:15-134:4.)

20. Choristers in the Core Supplementary Chorus and the Supplementary Chorus may sing in one, some or all of the productions that Lyric produces in a season depending on the vocal needs of the production. (Ex. E at pages 43:22-52:14.)

21. Members of the Supplementary Chorus are paid a lower hourly rate and a lower per production rate than members of the Core Supplementary Chorus as determined by the AMGA contract. (Ex. E at page 175:14-17.)

22. The Chorusmaster solely determines which vocalists are selected for each chorus for the upcoming season's productions. (*See*, Deposition Transcript of Michael Black attached as "**Exhibit G**" at pages 95:20-96:2.)

23. The Chorusmaster determines who is selected for the choruses based on the vocal quality of each singer and their compatibility or suitability for each chorus. (Ex. G at page 104:6-9.)

24. The number of choristers in the Core Supplementary Chorus and the Supplementary Chorus vary by season. (Ex. G at page 22-23.)

25. The choristers in the Core Supplementary Chorus are selected to fill the vocal gaps in the Regular Chorus. (Ex. G at page 27:13-24.)

26. Choristers are not demoted at Lyric; they are hired and assigned to each chorus following an audition process to where they will be the most beneficial to Lyric. (Ex. G at pages 28, 49 and 104.)

27. Management employees of Lyric determine the number of productions in any given season and the number of choristers allowed for each production based, in part, in budgetary considerations. (Ex. G at pages 130, 134:3-7.)

28. The bargaining agreement specifically states that the employer "has the right to make the final selection of any Chorister." (See Ex. D at page 55.)

29. In 2013, Michael Black was hired as the Chorusmaster at Lyric. (Ex. G at page 17:8-9.)

30. Maestro Black did not have access to any chorister's age from Lyric and only knew the age of a chorister if they told him directly or if someone else told him. (Ex. G at page 97.)

31. In 2013, at the age of 39, Plaintiff Martin Poock auditioned for Maestro Black. (Ex. E at page 105:19-22.)

32. Maestro Black noted in 2013 that Plaintiff Poock "had questionable dramatic presence" and his "lower notes were lacking." Ex. E at pages 83:12-87:17.)

33. Nonetheless, Maestro Black hired Mr. Pook in the Core Supplementary Chorus for the 2014-15 season. (Ex. G at pages 56:24-57:5.)

34. On October 9, 2015 Plaintiff Martin Poock auditioned for a position in the Core Supplementary Chorus in before Maestro Michael Black. (See, Defendant's Response to Plaintiff's Request for Production bates-stamped 00024-00067 attached as "**Exhibit H**" at page DEF 00030.)

35. On October 27, 2015, pursuant to the AGMA agreement, Lyric issued a letter to Plaintiff Poock with comments from his October 9, 2015 audition. (Ex. H at page DEF 00030.)

36. In the October 27, 2015 letter to Plaintiff Poock, Mr. Black states that his "Bass-baritone quality of voice leaves question of suitability as a second bass; more volume than demonstrated in this audition is needed in lower range." (Ex. H at page DEF 00030.)

37. On November 25, 2015 (incorrectly written as November 25, 2014), Lyric issued Plaintiff Poock a letter stating that he would not be re-engaged as a Core Supplementary member of the Lyric for the 2016-2017 season. (See Ex. H at page 31 and Ex. G at 57:7-58:13.)

38. Plaintiff Christine Steyer had auditioned for Maestro Black in 2013 at the age of 44, and was selected for the Core Supplementary Chorus for the 2014-15 season. (Ex. F at page 42:3-12 and page 44:23-45:9.)

39. On October 9, 2015 Plaintiff Christine Steyer auditioned for a position in the Core Supplementary Chorus in before Maestro Michael Black for the 2016-17 season. (Ex. H at page DEF 00024.)

40. On October 27, 2015, Lyric issued a letter to Plaintiff Steyer with comments from her October 9, 2015 audition. (Ex. H at page DEF 00024.)

41. In the October 27, 2015 letter to Plaintiff Steyer, Mr. Black states that there were "Some intonation issues involving flatness; this was most notable in middle to lower middle range, and is problematic for choral compatibility." He also stated " when voice was off breath, sound quality did not have much core." (Ex. H at page DEF 00024.)

42. On November 25, 2015, Lyric issued Plaintiff Steyer a letter stating that she would not be re-engaged as a Core Supplementary member of the Lyric for the 2016-2017 season. (Ex. H at page DEF 00067.)

43. Maestro Black was surprised by both of the Plaintiffs' October 2015 auditions and therefore offered both Plaintiffs an opportunity to meet with him following the October 9, 2015 audition and discuss his comments. (Ex. G at page 36:11-40:3 and 42:22-24.)

44. Maestro Black met with Plaintiff Poock and a member of AGMA, Sherry Watkins on November 7, 2015 to discuss Plaintiff's October 9, 2015 audition. (Ex. H at page DEF 00039.)

45. Maestro Black told Plaintiff Poock that his worst case scenario was that Plaintiff Poock would sing in four operas for the next season as a Supplementary Chorister, which was the number of shows he had for Second Basses at that time, provided that he re-auditioned in March of 2016. (Ex. G at pages 68-70.)

46. Maestro Black voluntarily offered both Plaintiffs an opportunity to sing again at the callback round following the General Chorus Auditions in March 12, 2016. (Ex. G at pages 129:12-130:2.)

47. Both Plaintiffs sang for Maestro Black in March, 2016. (Ex. H at page DEF 00040 and DEF 00054.)

48. Following the meeting with Mr. Poock on November 7, 2015, financial issues changed at Lyric and there were fewer supplementary chorus positions available for the productions slated for the 2016-17 season. (Ex. G at pages 70-71.)

49. Maestro Black was informed by upper management at Lyric to reduce the number of choristers in the shows for the following season. (Ex. G at page 121.)

50. In March of 2016, Maestro Black continued to have problems with Ms. Steyer's voice. (Ex. G at pages 51.)

51. In March of 2016, Maestro Black heard the same vocal problems with Mr. Poock's voice that he heard in October of 2015 in that it lacked notes in the lower register. (Ex. G at page 73:23-74:2.)

52. Maestro Black believed that both Plaintiffs were valuable choristers and, as a result of both the October 2015 audition and the March 2016 audition, both Plaintiffs were offered a one year contract in the Supplementary Chorus for the 2016-17 season. (Ex. G at page 129:24-130:2, 40:4-12, and 50:10-15: and Ex. E at page 136:18-24.)

53. On June 6, 2016, Plaintiffs filed a joint internal complaint with the Director of Human Resources alleging that they were demoted due to their age and tenure in an effort by the Lyric to cut costs. (Ex. H at page DEF 00032-00033.)

54. Lyric conducted an internal investigation and found no evidence of age discrimination. Lyric's findings indicated that Plaintiffs were not hired in the Core Supplementary Chorus for the 2016-17 season due to the legitimate business reason of vocal quality and compatibility and that age was not a factor in the decision. (Ex. H at page DEF 00056-00057.)

55. Plaintiffs' ages did not play any role whatsoever in the decision to not hire them in the Core Supplementary Chorus for the 2016-17 season. (Ex. D at 71.)

56. The only reason that Plaintiff Poock was not offered more productions in 2016-17 was due to the instruction from management at Lyric to reduce the number of choristers in the Supplemental Chorus for that season. (Ex. G at page 135.)

57. Maestro Black had no knowledge of any chorister's seniority or how much they made per hour at Lyric. (Ex. G at page 104.)

58. Maestro Black made his decisions for engagement based on vocal auditions, including the way they sing and their artistry, not age, seniority or lack thereof. (Ex. G at pages 105-107, 122.)

59. Chris Filipowicz was selected as a Bass II for the Core Supplementary Chorus for the 2016-17 season at Lyric whereas Martin Poock was not. (Ex. G at page 78:16-17.)

60. Plaintiff Poock was not in the audition of Chris Filipowicz, does not know when he auditioned and has no personal knowledge of the quality of his voice. (Ex. E at pages 146:16-154:5.)

61. Kaileen Miller, Carla Janzen and Suzanne Kwiatowski were selected for the Core Supplementary Chorus by Maestro Black for the 2016-17 season whereas Plaintiff Steyer was not. (Ex. G at page 115.)

62. Plaintiff Steyer was not in the auditions of Kaileen Miller, Carla Janzen and Suzanne Kwiatowski. (Ex. F at pages 141:7-143:12.)

63. Maestro Black believed that Kaileen Miller, Carla Janzen and Suzanne Kwiatowski had better auditions in 2015 that Plaintiff Steyer because they did not have the same intonation problems that Plaintiff Steyer did. (Ex. G at pages 115:20-116:22.)

64. Maestro Black did not know the ages of Plaintiff Steyer or the ages of Kaileen Miller, Carla Janzen and Suzanne Kwiatowski in 2015. (Ex. G at page 117.)

65. Plaintiff Poock believes that Maestro Black's negative audition comments were motivated by his decision to hire less costly singers. (Ex. E at pages 178:19-185:19.)

66. Plaintiff Steyer stated that she would have been reached greater seniority, and thus greater pay, had she been hired in the Core Supplementary Chorus is 2016-17 and that was the reason she was not hired. (Ex. F at pages 101-102.)

67. Maestro Black was never instructed to hire less costly singers, nor did he have knowledge of what any chorister was paid. (Ex. G at page 119:7-10 and page 104:15-105:9)

68. A chorister's seniority was never a factor in Maestro Black's selection of a chorister at Lyric. (Ex. G at page 117.)

69. Age was never a factor in Maestro Black's selection of a chorister at Lyric. (Ex. G at page 117.)

70. Maestro Black made the decision to engage Plaintiffs in the Supplementary Chorus instead of the Core Supplementary Chorus based on their auditions and not on age or seniority. (Ex. G at page 105:6-9.)

Dated: November 25, 2019

                                             Respectfully submitted,

                                             _/s/ Stephanie A. Cantrell_____
                                             Stephanie A. Cantrell

Stephanie A. Cantrell
Schueler, Dallavo & Casieri
233 S. Wacker Dr., Suite 6150
Chicago, Illinois 60606
(312) 831-1090
Stephanie.cantrell1@sdc-atty.com
ARDC: 6228963