IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE A. STEYER AND MARTIN L. POOCK, | ) ) ) |
| Plaintiffs, | ) No. 17 CV 6014 ) ) Judge John J. Tharp, Jr. |
| v. | ) ) |
| LYRIC OPERA OF CHICAGO, | ) ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Christine Steyer and Martin Poock, former choristers for the Lyric Opera of Chicago (Lyric), claim they were demoted within the Chorus because they were over 40, in violation of the Age Discrimination in Employment Act. Lyric contends that the plaintiffs' performances in auditions, not their age, determined their placement on the Chorus. The Court finds that the plaintiffs have not adduced evidence of age discrimination sufficient to support a verdict in their favor. Accordingly, Lyric's motion for summary judgment is granted and judgment will be entered in Lyric's favor.

## BACKGROUND

The Lyric Opera divides its choristers into three groups: the Regular Chorus, the Core Supplementary Chorus, and the Supplementary Chorus. Defendant's Statement of Material Facts (DSMF) ¶ 10, ECF No. 83. The Regular Chorus consists of between 46-48 members who receive weekly pay and benefits and are guaranteed to perform in every performance that requires a chorus. Dep. of Martin Poock 43:22-44:11, ECF No. 83-5. The Core Supplementary Chorus usually consists of 12 members who perform in fewer operas than regular choristers; whether the Core

members perform in a given opera is determined by Lyric according to its acoustic and vocal needs for that production. Pl.'s Resp. to DSMF ¶ 25, ECF No. 84. Pursuant to the collective bargaining agreement (all choristers are members of the American Guild of Musical Artists, or AGMA) Core Supplementary choristers must reaudition for their roles every two years. *Id.* at ¶ 14. Supplementary choristers, on the other hand, must audition annually, and are paid a lower hourly rate and lower per-production rate than Core choristers. *Id.* at ¶ 14. Core and Supplementary choristers are part-time, freelance seasonal employees who may accept work with other organizations. *Id.* at ¶ 15.

Lyric's Chorusmaster, Maestro Michael Black, conducts auditions and selects choristers for each of the three choruses. *Id.* at ¶ 16.[1] Within weeks after auditions, Core and Supplementary

---

[1] The plaintiffs dispute this, saying that they "cannot confirm or deny that the Chorusmaster is the sole decision-maker for selecting Choristers" but the dispute is not genuine. *See* Pl.'s Resp. to DSMF ¶¶ 16, 22, ECF No. 84. "Disputing" a fact in this equivocal manner is not sufficient for a litigant facing summary judgment. Martin Poock stated at his deposition that he believes the artistic administration has a role in selecting choristers. Plaintiffs also seize on a provision of the AGMA collective bargaining agreement with states that "the Employer has the right to make the final selection of any Chorister." *Id.* This, the plaintiffs argue, is ambiguous as to who makes final employment decisions for choristers. Maestro Black maintains that he alone decides which voices he needs on the Chorus, and that he made the decisions with respect to Poock and Steyer that form the basis for this litigation. Black Dep. 43:1-7, Ex. G to DSMF, ECF No. 83-7. As discussed further below, the plaintiff's theory is that they were cut from the Core to save costs because they were more senior; because Maestro Black says that he alone makes hiring decisions based on auditions and maintains that he is not aware of choristers' pay and seniority, *Id.* at 116:16-119:10, the plaintiffs are attempting to suggest some other decisionmaker who considers seniority may have had input on the decisions to move Steyer and Poock to the Supplementary Chorus. But all they offer on this front are the plaintiffs' own speculations, unsupported by any evidence, that something else influenced Black's decision, as well as the unpersuasive suggestion based on the collective bargaining agreement that "employer" should be read to cast doubt on the Maestro's discretion. Moreover, the plaintiffs' suggestions that someone other that Maestro Black might be involved in hiring decisions is heavily qualified, and their deposition responses ultimately indicate that they don't know of anyone other than Black who makes hiring decisions. *See* Steyer Dep. At 64:2-21, Ex. F to DSMF, ECF No. 83-6. The best the plaintiffs have been able to do is provide their observation that a union representative and Black's administrative assistant sit in on auditions, neither of whom are decisionmakers with respect to hiring.

choristers receive a "comment letter" from the Maestro, and if they are selected, they are soon issued a letter of engagement for the following season, along with either a two-year contract (if selected for Core) or a one-year contract (if selected for Supplementary). *Id.* at ¶¶ 17-19. Furthermore, the AGMA collective bargaining agreement sets forth a system of seniority for Core and Supplementary choristers. Lyric produces eight operas per season. A Core or Supplementary chorister who performs in at least four of those productions each season earns a full year of seniority; fewer than four productions earns half a year of seniority. D's Resp. to PSMF ¶ 14.

Both Steyer and Poock claim that, after their 2015 auditions, they were demoted from the Core to the Supplementary chorus[2] because Lyric wanted to push out older members who had accumulated seniority (and thus merited higher pay). The Court will set forth the facts as to each of the plaintiffs, beginning with Steyer.

Steyer has impressive credentials and a career of performances with various institutions. Def.'s Resp. to PSMF ¶¶ 1-2. She performs with Lyric as a Soprano I.[3] *Id.* at ¶ 17. In 2000, she

---

[2] The parties quibble over whether the plaintiffs were "demoted" from the Core to the Supplementary Chorus, or whether their contracts were simply not renewed and thus this is a "failure-to-hire" claim. Def.'s MSJ at 5. Lyric points out the choristers are on one- or two-year contracts and that renewal of those contracts is contingent on the results of auditions that occur at the end of the contract period. *Id.* The plaintiffs respond that this felt like a demotion to them; they were once on the Core Chorus, and after auditions, they found themselves on the Supplementary Chorus, earning less and performing in fewer productions. Pl.'s Resp. to Def.'s MSJ at 2. They also point to a handwritten note, penned by a Lyric employee, on one of the plaintiff's files that characterizes the adverse action as a demotion. This distinction has no significance on the ultimate legal inquiry; the parties do not dispute that the plaintiff's non-reengagement to the Core Supplementary Chorus constituted adverse action. Stated precisely, the plaintiffs' grievance is that they were not reengaged for the Core Supplementary Chorus and were instead engaged for the Supplementary Chorus. The Court uses the word "demotion" for the sake of simplicity and consistency.

[3] The Chorus at the Lyric Opera is divided into four voice types; those are, in order from the highest voice to the lowest: soprano, alto, tenor and bass. Def.'s Resp. to PSMF ¶ 15. There are gradations within each group. As relevant here, Sopranos are either I or II; a Soprano II is a higher voice type than a Soprano I. Bass singers are also I and II (or first bass and second bass), a

3

was hired by Lyric into the Regular Chorus. *Id.* at ¶ 3. She left in 2007 to pursue her solo career, returning to audition in 2012 at the age of 44, when she was hired as a Core Supplemental chorister as a Soprano I for the 2013-2014 season. *Id.* at ¶ 5; Pl.'s Resp. to DSMF ¶ 38. At the conclusion of her two-year contract, she auditioned again in October 2015. Pl.'s Resp. to DSMF ¶ 39, ECF No. 84. Steyer received Maestro Black's comments later that month, which described his assessment that she had given "a musical performance, with good dramatic presence," but that she had "[s]ome intonation issues involving flatness; this was most notable in middle to lower middle range and is problematic for choral compatibility… when voice was off breath, sound quality did not have much core." *Id.* at ¶ 41. Steyer was 47 at the time of these events. Pl.'s Resp. to Def.'s MSJ at 14. On November 25, 2015, she received a letter from Lyric notifying her that she would not be re-engaged as a member of the Core Supplementary Chorus. *Id.* at ¶ 42. She re-auditioned in March 2016 (along with Poock) and afterwards was offered a spot in the Supplementary Chorus. *Id.* at ¶¶ 50-52.

Steyer contends that her demotion to the Supplementary Chorus was the result of age discrimination. She points to several other younger and less experienced singers whose hiring or re-engagement, she contends, reveals Lyric's animus against older vocalists. Jill Dewsnup (a Soprano I who was 40 in the fall of 2015, *see* Pl.'s Resp. to Def.'s MSJ at 14) was originally hired as a Supplementary chorister for the 2015-2016 and then engaged in the Core for the 2016-2017 season. Def.'s Resp. to PSMF at ¶ 28. She had only one year of seniority at Lyric. *Id.* Kaileen Miller was hired to the Core in 2012 and was reengaged in the Core for the 2016 when she was 35 years old and had three years of seniority. *Id.* at ¶ 29. Carla Janzen was originally hired in 2006

---

Bass II's voice is lower. A Bass I might also be called a baritone. Someone whose voice falls in between a first and second bass is called a "bass-baritone."

4

and was reengaged as a Soprano II for the 2016-2017; she was 38 years old and had five years of seniority when she was reengaged. *Id.* at ¶ 30. Finally, Suzanna Kwiatowski, originally hired in 2008, was engaged to the Core Supplementary Chorus as a Soprano II for the 2016-2017 season; she was 31 years old at the time and had 4.5 years of seniority. *Id.* at ¶ 31.

Poock, like Steyer, has multiple degrees in the arts and a storied career of performances with various opera houses and other institutions. He has always performed as a second bass (or Bass II), the deepest voice type. Def.'s Resp. to PSMF ¶¶ 6-8. Lyric hired Poock in 2003 as a Supplementary chorister; he moved up to the Core for the 2004-2005 season. *Id.* at ¶¶ 9-10. He was repeatedly reengaged as a second bass in the Core Supplementary Chorus until 2015. *Id.* at ¶ 11.

Mr. Poock likewise contends that his demotion at age 41 to the Supplementary Chorus for the 2016-2017 season was the result of age discrimination. After Poock's audition in 2013 that resulted in his selection for the Core Supplementary Chorus for two years, Black wrote that Poock demonstrated "questionable dramatic presence" and observed that his "lower notes were lacking," while there was "good connection to breath, and good intonation" and "good choral compatibility." Pl.'s Resp. to DSMF ¶ 31-32. And after Poock's 2015 audition, Black commented that Poock's "Bass-baritone quality of voice leaves question of suitability as a second bass; more volume than demonstrated in this audition is needed in lower range." *Id.* at ¶ 36. On November 25, 2015, Poock received a letter from Lyric notifying him that he had not been reengaged as a Core Supplementary chorister for the 2016-2017 season. Poock and an AGMA representative met with Black in November 2015 to discuss the audition comments, with Poock expressing his disagreement with Black's assessment of his voice. *Id.* at ¶ 38. Black told Poock that the 2015 audition had been better than his last one and that his best-case scenario was six operas with the Core or, worst-case,

5

four operas with the Supplementary. *Id.* In January 2016, Poock had a private coaching session with Black to prepare for his March 2016 reaudition. *Id.* at ¶ 39. During that session, Black noticed that Poock wears a hearing aide, and afterwards, emailed his assistant Stephanie Karr: "So Martin Poock wears a hearing aide." *Id.* at ¶ 39. Poock's reaudition did not change Black's opinion of his voice, and he was engaged for only one production as a Supplementary chorister for the 2016-2017 season.

At the time, Poock had accumulated 8.5 years of seniority. Poock believes that his demotion to the Supplementary Chorus for the 2016-2017 was consistent with a pattern of Lyric pushing out members who merited higher pay due to their seniority. He, like Steyer, points to several younger singers who were hired for either the Core or the Regular Chorus. Mr. Caisson, a 30-year-old who had previously been engaged for two seasons as a Supplementary chorister, was hired as a second bass for the Core Supplementary Chorus for the 2016-2017. Mr. Filipowicz, 29 years old, was a new hire who was engaged directly into the Core Chorus for the 2016-2017 season. Jared Esguerra, 25 at the time of his 2015 audition with 3 years of seniority, was reengaged as a Core Supplementary chorister. *Id.* at ¶ 36. Poock points to one chorister, a Mr. Reiff, who was over 40, had six years of seniority and was likewise not reengaged. *Id.* at ¶ 35. Of these bass singers, Reiff and Poock had more years of seniority than the others that were reengaged.

Steyer and Poock filed this action in 2017, initially appearing pro se. They retained a lawyer during discovery.

## DISCUSSION

To prevail on their claims, Steyer and Poock must prove "by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Carson v. Lake Cty., Ind.*, 865 F.3d 526, 532 (7th Cir. 2107). The ADEA thus requires tighter causation than that permitted under Title VII, which protects against discrimination where a protected

6

characteristic is a "motivating factor." *See Gross v. GBL Fin. Servs.*, 557 U.S. 167, 174 (2009). Unlike in the Title VII context, Steyer and Poock must show that age was the determining factor in their demotion from the Core to the Supplementary. *Id.* at 173.

A party moving for summary judgment must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's task is to determine whether the evidence would permit a reasonable factfinder to conclude that the plaintiffs' age caused Lyric to not reengage them for the 2016-2017 season. *Ortiz v. Werner Enterprises*, 834 F.3d 760, 765 (7th Cir. 2016). The Court views all facts and draws reasonable inferences in favor of the non-moving party. *Carson*, 865 F.3d at 532.

Lyric argues that its evidence demonstrates Poock and Steyer were not re-engaged for the Core Supplementary Chorus because of their audition performances. Steyer and Poock respond that their evidence shows "an alarming rate of Lyric employees over the age of 40 not being reengaged and being replaced by younger, less experienced, and less qualified employees." Pl.'s Resp. at 5. The plaintiffs' depositions clarify that both plaintiffs think that Lyric did this to cut costs because older employees tend to have greater seniority. Because Steyer admits that she believes she was demoted due to her years of service, not her age, and that she has no other evidence of age discrimination, her claim fails as a matter of law. Poock also relies primarily on his belief that he was demoted to cut costs, and though he also presents some scraps of evidence to show discrimination, that evidence is not enough to create a fact issue that requires a jury trial.

A. **Adverse Action Based on Years of Service Does Not, Without More, Violate the ADEA**

Steyer and Poock contend that Lyric cut them from the Core Supplementary Chorus to reduce costs, because, as older employees, they had accumulated significant seniority. The notion that they were fired to cut costs because of seniority pervades their briefing, fact statements, and

depositions. In arguing that they were demoted due to their seniority, they effectively concede that age was not the determinative reason that they were demoted and make clear that even they do not believe that age was a but-for cause for their demotion.

For its part, Lyric denies that singers' seniority factors into their staffing decisions at all—Maestro Black, they say, doesn't know singers' pay or seniority unless those singers tell him. Def.'s MSJ at 5. But the dispute over whether Lyric considered choristers' seniority is ultimately not material because even if Lyric were trying to cut costs by pushing out more senior singers and hiring new, lower paid ones, that would not amount to age discrimination.

In *Hazen Paper Co. v. Biggins*, the Supreme Court held that "[b]ecause age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'" 507 U.S. 604, 611 (1993). The respondent, 62-year-old Biggins, had been fired just weeks before his pension benefits vested. *Id.* at 607. This was an ERISA violation, but the courts below had also found it to be compelling evidence of age discrimination. *Id.* In remanding the case so that the court of appeals could reconsider whether there was sufficient evidence of age discrimination, the Supreme Court explained that Congress sought to combat negative and unfounded stereotypes in passing the ADEA—for example, that older workers are less productive or competent—and that if an employer makes a decision based on some other factor like seniority, "the problem of inaccurate and stigmatizing stereotypes disappears." *Id.* at 611. The Supreme Court applied this holding to an analogous scenario in *Kentucky Ret. Sys. v. E.E.O.C.*, 554 U.S. 135 (2008), where it held that age and pension status were analytically distinct, and that the employer could take the latter into account without necessarily discriminating based on the former. *Id.* at 143. And the Seventh Circuit in *Carson v. Lake Cty., Indiana* held that the mass termination of a group of

8

employees over 65, prompted by concerns over the costs of those employees' health insurance plans, did not violate the ADEA. 865 F.3d 526, 533-34.

The Court in *Hazen Paper* did not "preclude the possibility that an employer who targets employees with a particular pension status on the assumption that these employees are likely to be older thereby engages in age discrimination." 507 U.S. at 613. Suppose Lyric fired workers claiming that it was driven by cost-cutting but had actually wanted to fire them because of their advanced age. Then the plaintiffs would have a valid ADEA claim, because in that hypothetical, age would have "actually motivated" the terminations. *Id*. The problem for Steyer and Poock is that they have not shown that their employer did this; in fact, the heart of their argument is that Lyric targets older employees for demotion or termination **because those employees are usually more senior**, and thus more expensive to retain. Even if Lyric were waging a surreptitious campaign to dispose of singers who had accumulated more seniority, they would not violate the ADEA in doing so if they were, as the plaintiffs claim, motivated to cut costs, because their motivation would not be based on harmful age-based stereotypes, but rather on a desire to save money. It is possible that Lyric might have violated some other law had they done this, but the plaintiffs have only argued that Lyric violated the ADEA.

This problem is especially stark for Steyer, who admits that her only evidence of age discrimination is Lyric's claimed treatment of employees with more seniority. She testified as much in her deposition:

> Q: … Is it your contention here today that the Lyric Opera did not hire you for the 2016-17 season because you were going to obtain that next level of seniority; and, therefore, be a more expensive chorister?
>
> A: Yes.
> …

9

> Q: … As it relates to you, were there other factors, other than seniority, that contributed to not hiring you for the 2016-17 season in the Core Supp?
>
> A: Age discrimination and accompanying seniority.
>
> Q: Okay. So what other examples of age discrimination do you have, other than the seniority issue that we just talked about, assuming that that's a valid age discrimination factor?
>
> A: As relating to me, I can only point to that.
>
> …
>
> Q: Okay. Aside from seniority, do you have any evidence of age discrimination?
>
> A: As it relates to me?
>
> Q: Yes.
>
> A: No.

Steyer Dep. 99:17-102:1, Ex. F to DSMF, ECF No. 83-6.

Here, Steyer repeatedly admits that she believes she was discriminated against because of her seniority, and not because of age-based stereotypes. And in summary judgment briefing, Steyer did nothing to address these admissions; instead, she tried to paper over them by arguing, unpersuasively, that "[seniority] actually serves as a clue as to how old [the plaintiffs] were… Thus, it is obvious that Lyric's pattern since 2008 is to use age as the motivating and determinative influence to demote, terminate, not reengage their employees." Pl.'s Resp. at 26. But it is far from obvious that considering singers' seniority indicates that age was the determinative factor in their non-retention to the Core Supplementary Chorus. Steyer had 8.5 years of seniority when she auditioned in 2015; each year, singers earn either one year or half a year in seniority depending on the number of productions in which they perform. Elsewhere the plaintiffs have put forward Mr. Esguerra as a comparator, who was 25 and had three years of seniority in the Fall of 2015. Def.'s Resp. to PSMF ¶¶ 35-36. Even if he earned only a half year of seniority for each season, by the

plaintiffs' logic, he would be due for termination or demotion sometime in his mid-to-late-thirties after accumulating seniority comparable to that of Poock and Steyer. If he were so terminated, it would not be a violation of the ADEA, which defines employees 40 and over as the protected class. It is not difficult to imagine that other employees under 40 might accumulate more seniority than the plaintiffs had in 2015. Seniority and advanced age may often overlap, but they remain analytically distinct, and it cannot be said that the practice Steyer and Poock accuse Lyric of engaging in—which Lyric denies—discriminates because of age.[4]

Given Steyer's admission that her only inkling of age discrimination is the fact of her own seniority, her claim fails as a matter law.

Poock made similar statements in his depositions:

> Q: So you believe seniority had a factor in the decision making of Michael Black?
>
> A: I believe age and accumulated seniority is a factor, yes.
>
> Q: Why would age be a factor?
>
> A: Age because presumably if you've been there many years and over the age of 40 you have accumulated that much seniority. They go hand in hand.
>
> Q: I'm sorry. So are you saying it's the cost-cutting measure as opposed to the actual number of—number of years you've been on this earth?
>
> A: It's both.

---

[4] It is also worth noting that Steyer was 44 when she was hired back into the Core Supplementary Chorus in 2012 after returning from pursuing her solo career. Def.'s Reply at 12-13. She contends that she was not engaged for the Core two years later because she was over 40 (and thus more senior). Dealing with another case in which an over-40 employee was hired and then fired two years later, the Seventh Circuit observed that "[i]t seems rather suspect to claim that the company that hired him at age 47 'had suddenly developed an aversion to older people' two years later." *Rand v. CF Industries*, 42 F.3d 1139, 1147 (7th Cir 1994), *quoting Lowe v. J.B. Hunt Transport, Inc.*, 963 F.2d 173, 174-75 (8th Cir. 1992).

        Q: How so?

        A: Because older employees have accumulated seniority.

Poock Dep. 151:21-152:10, ECF No. 83-5.

Here, Poock is clear that he believes Lyric uses age as a proxy for seniority ("presumably" those over 40 have more seniority); he does not suggest that Lyric is using seniority as a proxy for age. *See Hazen Paper*, 507 U.S. at 611. Unlike Steyer, however, Poock claims there is something more, but his evidence is so weak that no reasonable jury could conclude that Lyric fired him due to age discrimination.

    **B.**    **Poock has not made a *prima facie* case of age discrimination**

Poock bears the initial burden to establish a *prima facie* case of age discrimination, which requires a showing that he (1) belonged to a protected class, (2) was qualified for the position; (3) he was not hired despite being qualified; and (4) someone with equal or lesser qualifications who did not belong to the same protected class was hired. *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once he has satisfied that burden, Lyric must articulate a legitimate, non-discriminatory reason for not reengaging him to the Core Supplementary Chorus. Lyric has done this, so the burden returns to Poock to show that Lyric's explanation was a pretext for discrimination. Poock cannot establish a prima facie case because he cannot show either that he was qualified or that those who were hired in his stead were less qualified.

The parties dispute the relevant qualifications for a chorister. Poock contends he is well-qualified based on his education and experience, and Lyric does not dispute that he possesses good credentials. Def.'s Resp. to PSMF ¶¶ 1-9. But, Lyric argues, the depth of a singer's resumé is a secondary consideration—what matters most is a singer's vocal quality as assessed in an audition.

12

Def.'s MSJ at 9-10.[5] Indeed, the collective bargaining agreement with AGMA provides that "[t]he experience that Core Supplementary Choristers and Supplementary Choristers acquire with the Employer will be considered at chorus auditions for Regular Chorus openings ***provided they qualify*** in other artistic areas such as vocal and physical qualifications, temperament, previous attendance record, etc.," and further that Lyric "has the right to make the final selection of any Chorister." AGMA Collective Bargaining Agreement 54-55, Ex. D. to DSMF, ECF No. 83-4 (emphasis added).

Maestro Black evaluated Poock's voice in 2015 and determined that it was "bass-baritone and this leaves question of suitability as a second bass." This was not the first time Poock had received such a comment; in his 2013 audition, Black had commented that Poock's lower notes were lacking, though at the time he nonetheless displayed "good choral compatibility" and Black hired him for the Core Supplementary Chorus. Def.'s Resp. to PSMF ¶ 20; P.'s Resp. to DSMF ¶ 32. Poock also acknowledged that he received criticisms after his 2011 audition. Poock Dep. 179:4-8. Plainly, Black's concern about Poock's range was genuine; Black sounded a consistent note over four years and three auditions: Poock was put on notice about an issue with his lower register, and then Black determined he was not qualified for a position on the Core Supplementary Chorus. This determination was made according to the most important criterion set forth in the CBA—namely, his vocal qualities.

Poock does not argue that his purported comparators' audition performances were worse than his, and that they were hired nonetheless.[6] Instead, he argues that he is qualified because of

---

[5] Citations to page numbers for the Defendant's motion for summary judgment refer to the ECF pagination printed at the top of the page because the memorandum is not otherwise paginated.

[6] In the plaintiffs' briefing, Poock says that he did not receive the evaluations of two comparators in discovery, Cassion and Filipowicz, and therefore there is a genuine dispute of material fact. In an email from December 2019, Lyric said that it did not have audition comments

13

his experience, and the others unqualified because they have less experience. Pl.'s Resp. at 15-17. The collective bargaining agreement is clear, however, that audition performances are the determinative factor for a singer's retention.

Poock asserts that Lyric engages in a pattern of pushing out older employees. Pl.'s Resp. at 4-5. The sole example he offered in his deposition was Randy Manteo, an over-40 singer who, Poock says, was pushed out when Poock himself was hired. *Id.* at 5. Other than this, nothing is known about Manteo, and Poock conceded that he knew nothing about Manteo's audition. Poock Dep. 152:21-153:21. Recognizing that Manteo's departure therefore provides no help, the plaintiffs argue that "[d]espite Mr. Poock's one example, the evidence has revealed an alarming rate of Lyric employees over the age of 40 not being reengaged and being replaced by younger, less experienced, and less qualified employees." In support of this assertion, Poock offers three exhibits: First, he offers a chart that lists which singers received offers for a particular chorus over a period of three seasons. Pl.'s Ex 1, ECF No. 84-2 (Exhibit 1). Second, there is a chart listing the roster of Core Supplemental choristers for the 2015-16 and 2016-17 seasons. Pl.'s Ex 3, ECF No. 84-4 (Exhibit 3). And third, he provides a list of singers who were issued letters of non-

---

for those two because it was not contractually obligated to create or retain audition comments for new hires or Supplementary choristers. Ex. 9 to Pl.'s Resp. to DSMF, ECF No. 84-10. In his deposition (which was taken in August 2019) Poock indicates that he did review Cassion's and Filipowicz's evaluations from 2015 auditions. Poock Dep. 180:5-11. This might have been an error on Poock's part, given that Lyric's counsel said no such documents were retained or produced. In any event, the plaintiffs have not come forward with any evidence rebutting Lyric's contention that these two were hired because they had successful auditions—no affidavits from other people who may have been in those auditions, and no deposition testimony from anyone who could shed light on how those auditions went. There is, therefore, no genuine dispute here; the plaintiffs do not argue that Lyric was required to keep audition comments for those singers; instead, they suggest that Lyric is lying about those singers ever having auditioned at all: "This raises the question of whether or not Filipowicz and Cassion even auditioned for Lyric around the same time Poock and Steyer audition [*sic*] for the 2016-2017 season." The plaintiffs have adduced no evidence to support this speculative hypothesis, and the implausibility of this unsupported assertion demonstrates that they are grasping at straws to concoct a fact issue.

reengagement, meaning they were not retained for any tier of the Lyric Chorus. Ex 22, ECF No. 84-23 (Exhibit 22).

Exhibit 1 relates to Poock's claim (MSJ at 6) that Peder Reiff and Kirk Greiner (also bass vocalists) were pushed out of the Core Supplementary Chorus pursuant to a pattern of age discrimination. But this snapshot of hiring decisions over three years does not support Poock's contention of age-based discrimination. Looking to a subset of the bass singers alone, Poock points to those singers who were over-40 (Poock, Greiner, and Reiff) who were demoted or given fewer performances and compares them with those under 40 (Wenzel and Filipowicz) who were promoted or hired directly onto a higher-tier chorus. But Poock's discussion omits mention of Nicolai Janitzky, about a year older than Poock, who was on the Core Supplementary Chorus in 2013 (when he auditioned for the 2014-15 Chorus and was 40 years old) and, in the following two years, was retained on the Core Supplementary Chorus and given more performances. Looking beyond bass vocalists, moreover, there is one singer who was over 50 (Michelle Wrighte) yet was retained on the Core Supplementary Chorus for this three-year period and appeared in more performances over the years. These two examples, whom Poock fails to mention, undermine his argument that Lyric's staffing of the Core Supplementary Chorus was motivated by age discrimination.

As for Exhibit 3, it shows how the roster of Core Supplementary personnel changed between the 2015-16 season and the 2016-17 season; for example, Poock and Steyer are on the Core Supplementary Chorus for the 2015-16 season and not for the 2016-17 season (when they had been moved to the Supplementary Chorus). The comparison does not support the claim that the Lyric was purging singers 40 and over from the Core chorus; if anything, it undermines Poock's argument that the Supplementary Chorus is Lyric's dumping ground for older singers because for

15

both seasons, the list shows that there are Core singers over the age of 40, several of whom were retained for both seasons. Here again is Michele Wrighte, who was a member of the Core for both seasons notwithstanding that, at age 51, she was older than both Steyer and Poock. Nicolai Janitzky, also over 40, was retained on the Core Supplementary chorus. Further, the list of Core choristers for the 2016-2017 season shows that the Lyric moved 41 year-old singer Jill Dewsnup to the Core chorus from the Supplementary chorus at the same time Poock claims he was being demoted from the Core because he was 41. The retention of Wrighte and Janitzky, as well as the hiring of Dewsnup, simply can't be squared with the plaintiffs' contention that the decision not to retain them on the Core chorus was a product of their age.

As for the Exhibit 22 chart, it appears to list chorus members who were not reengaged even for the Supplemental chorus over a 10-year period. This list, too, undermines rather than supports the plaintiffs' hyperbole about a systemic replacement of older singers with younger. For starters, it provides no information about the ages of new hires and so provides no basis to support the claim that older workers were "replaced" by younger workers. Nor does the list support a claim that older singers were being let go at an alarming rate; of the 19 singers included on the list, eight were younger than 40 when not reengaged. Perhaps most tellingly, the list demonstrates that singers were not being purged at age 40; rather, most continued as chorus members for years beyond their 40th birthdays. Take Wilbur Pauley, for example, who was 62 years old when he was not reengaged. Pauley's employment is particularly problematic for the plaintiffs' theory, moreover, because he had only a year and a half of seniority when he was let go. That means he was hired, at most three years earlier—*when he was 58*. Poock doesn't begin to explain why it is reasonable to conclude that the Lyric demoted him because he was 41 while at the same time engaging a singer some 17 years older than Poock.

16

Even if the data presented by these lists were not inconsistent with the plaintiffs' claims, they would still fall short of providing evidentiary support for the plaintiffs' claims of age discrimination. These are just lists, and they provide no information whatsoever about these singers, their auditions, or the circumstances of their hiring or demotion. This evidence falls woefully short of establishing a "pattern" of pushing older employees to the Core Supplementary Chorus  Given the dearth of evidence that Poock had better auditions than others who were hired, and because he provides nothing more than his speculation with respect to those he claims were pushed out due to age, he has not made a *prima facie* case.

Nor does Poock show that Lyric's reason for demoting him from the Core Supplementary Chorus was pretextual, so his claim would fall short even if he could establish a prima facie case. To show pretext, Poock must demonstrate that Black was dishonest in his audition comments, not just that Black's ear was off. *See Barricks v. Eli Lilly and Co.*, 481 F.3d 556, 560 (7th Cir. 2007). Poock argues that his audition comments must be phony because (1) if his voice did not have "good choral compatibility" then it makes little sense to demote him from the Core but keep him as a Supplementary Chorister, and (2) Maestro Black is lying when he says that he alone makes decisions regarding singers' qualifications.

The first contention is easily dismissed; Supplementary Choristers perform in fewer productions than Core and Regular choristers, so it makes perfect sense that there is a hierarchy of talent and qualifications for each tier. In sports, there are benchers and starters; the starters are the more skilled players, but no one thinks that the benchers must be so poor that they can't be on the team at all, and they still contribute by providing substitution.

As for the second contention, there is simply no evidence to support the notion that Lyric's management guided Black's decision-making for discriminatory reasons. The only evidence that

17

the plaintiffs have regarding some unseemly influence on Black's audition decisions is that Lyric's General Director was invited to attend choristers' callback auditions; whatever minimal probative force that fact might have had, however, dissipates immediately upon learning that the director ***did not attend***. Pl.'s Resp. at 25-26. Additionally, Poock disagrees with Black's assessment that he sounds more like a bass-baritone than a second bass; because no one had ever told Poock that before, the argument goes, the criticism must be false. Poock's disagreement is not enough to create a fact issue, and in any event, it was not the first time Poock's voice had been criticized by Black. As noted above, Poock acknowledges that he received critical comments in 2011, 2013, and 2015, that is, every single time Black heard him audition. What's more, the 2013 audition comments referenced the same issues as the 2015 audition, namely that Black heard Poock's voice as slightly higher than a second bass. The consistency of Black's audition comments over several years undermines the notion that Black's 2015 evaluation was "a set up to get [Poock] out of the Core." Pl.'s Resp. 16. And while Poock may dispute Black's assessment of his voice, Black does not need to have been correct for the defendants to prevail, so the dispute is not one that requires a jury to resolve. There is no basis for a jury to find that Black was lying.

That leaves the last two meager scraps of evidence, which do nothing to make the dispute any more genuine: a birthday card from Maestro Black wishing Poock a happy 40th, and Black's stray comment about Poock's hearing aid. As for the birthday card, it said "Dear Martin, Wishing you the happiest of 40ths. Lots of love and best wishes, Michael." At most, this demonstrates that Black knew Poock was 40, but does nothing to suggest discriminatory animus. Indeed, the plaintiffs acknowledge that Black recognized every singer's birthday, Pl.'s Resp. at 7, so acknowledging Poock's 40th birthday is utterly irrelevant. Indeed, Poock would have a better

(though still poor) argument about discriminatory animus if Black had *not* sent him a birthday greeting as he did everyone else.

As for Black's e-mail to his assistant observing that Poock wears a hearing aid—which consisted of the lone sentence "so Martin Poock wears a hearing aid"—it only demonstrates that Black noticed the hearing aid and told his administrative assistant. Perhaps it was an odd observation to make in an e-mail, though Black testified that he noticed it only because he himself has struggled with hearing loss in the past. In any event, it is undisputed that Black knew that Poock was over 40, so the only import the comment could have would be to support a claim founded on the ADA, not the ADEA. Poock has made no claim that he was demoted because of hearing loss, however, so this stray remark falls far short of allowing a reasonable inference of age discrimination.

It is Poock's burden to show that the audition process was a pretext for age discrimination, and he cannot carry it. Based on the thin evidence he has adduced no reasonable jury could find that Lyric violated the ADEA in demoting him to the Supplementary Chorus.

\* \* \*

Accordingly, Lyric's motion for summary judgment as to both of the plaintiffs is granted. Judgment will enter separately for the defendant.

Dated: May 9, 2022

John J. Tharp, Jr.
United States District Judge

19